BARNEY AUTO WRECKING COMPANY, complainant,

*v.*

RICHARD OTTO, receiver, defendant.

[Decided July 26th, 1927.]

Proof of payment to deceased persons, in cash, without receipt taken, of mortgage money, must be clear and convincing.

*Mr. Edward R. McGlynn,* for the complainant.

*Mr. William H. Osborne,* for the defendant.

BACKES, V. C.

The mortgage in question, which is sought to be redeemed, was made by the complainant to one Koegel, now deceased. Mrs. Koegel, the sole beneficiary under her husband's will, and one Goekler were his executors. Both are dead and Otto is executor of her will. The mortgage is dated October 2d, 1922, payable in annual installments of $500 and six per cent. interest payable semi-annually. The complainant claims it has paid three consecutive installments of principal and six semi-annual installments of interest, and offers to pay the balance, and prays a surrender of the mortgage for cancellation. The payments, it is claimed, were made in cash, without receipt taken. The defendant, executor, can find no trace of the payments in the bank accounts of his deceased, although the amounts were not unimportant to her estate of about $50,000; the bond and mortgage have no notation of payments; in the decedent's book of entries of securities, under the caption of the mortgage in question, the installments of interest of $90 under the date of their semi-annual due day are charged to the time of her death, indicating that there was no payment of principal; and the defendant, executor, has made adjustment of other securities, all conformably to the entries in that book.

Barney Harris, the president of the complainant company, testified that he made all payments to Goekler, one of the executors of the mortgagee, who was then carrying on the feed business for the estate on Ferry street, Newark, except the last of principal and interest, which he says he paid to Mrs. Koegel in the presence of Goekler. For the first six months interest (April, 1923) he says he gave his $90 check, which, because it was returned dishonored, moved Koegel to suggest cash instead of redepositing the check, and that he paid the amount later to Goekler, then in charge of the feed store. The dishonored check is not produced. The first payment of principal and interest (October, 1923) he endeavors to support by the production of a check voucher of the Bergris Realty Company, signed by Harris as president, for $300, dated October 17th, 1923, drawn on the Montclair-Essex Trust Company, serial number 132, to the order of cash, endorsed and cashed by Harris at the trust company. The cash, with the balance furnished by the complainant company, he says, was used to make the payment. There is nothing more than Harris' word for this, and also that he paid the interest installments in April, 1924 and 1925. To prove the second payment of principal (October, 1924) Harris produced a check of the Bergris company on the Montclair-Essex Trust Company, serial number 455, dated October 16th, 1924, to the order of Barney Romanoff, for $526.25. Harris and Romanoff testify that Romanoff cashed the check for Harris at Romanoff's bank, the American National Bank of Newark; that the $26.25 represented a bill for plumbing work due from Harris to Romanoff, and that Romanoff accompanied Harris to Goekler's office where Harris paid the identical five one hundred dollar bills received from the bank. Harris says he also at that time paid the interest, and Romanoff says that there was additional money paid, and that he knew what it was for, Harris having told him. They also would have it appear that they met quite accidentally on Livingston street, Newark, and, Romanoff dunning for his bill, was asked to cash Harris' check for $500, and, cashing it at the bank, Romanoff accompanied

Harris to look at a leak, a repair job, and on the way stopped in at Goekler's. Romanoff says he noticed that Harris took no receipt and that he made no comment, although it was contrary to his practice. At a later hearing Romanoff testified that the $526.25 check was not cash but that it was deposited and was part of a total of $2,681.25 deposited on the date of the check, leaving the inference that he drew his own check for the $500 cash. The third payment (October, 1925), it is claimed, was made to Mrs. Koegel, at her home, and Harris produced a check voucher of the Bergris company on the Montclair trust company, dated October 24th, 1925, for $250, to the order of cash, and endorsed and cashed by him, which cash, he says, was used to make up the payment. His brother, chauffeur to Mrs. Koegel, testified he was present and saw the money paid to Mrs. Koegel; the amount he could not say, but estimated it at "four or five or six hundred dollars," and he says he sensed it was mortgage money because Goekler had asked him to remind his brother that the mortgage money was due.

The burden of proof of payment is on the complainant, and in a situation so remarkable as this one, where the parties to whom it is alleged payments were made are dead, the proof must be clear and convincing. The court is not obliged to accept the testimony of witnesses when the attending circumstances challenge its verity. The production of the check vouchers of the Bergris company, in the absence of the check stubs, is of no probative value. It is not at all improbable that other check vouchers of the Bergris company would equally well have answered the purpose as those produced. The concern had a bookkeeper. Its checks were in serial number, and their absence creates the suspicion that they would not have been supporting. As to the alleged second payment in 1924: If the meeting with Romanoff was accidental and the request for the $500 spontaneous, it is not explained how it came about that the check for $526.25 on a printed form, serial numbered, of the Bergris Realty Company, is not in the handwriting of Harris, a good penman, as would ordinarily be the case in such cir-

cumstances. It is open to belief that the check was made to Romanoff at some other time and for some other purpose. And if Romanoff deposited the check instead of cashing it, as he first testified, and drew his own check for $500, why was not that voucher produced? Romanoff was given the opportunity to produce his books to show the charge account of $26.25, to account for that odd sum on the check, but he was unable to do so, giving the excuse that his books had been destroyed or lost. Romanoff's manner on the stand was not calculated to inspire faith in his testimony. Further, it is not explained why Harris should resort to Romanoff to cash his check for $500 instead of himself procuring the money at his own bank, as it appears he did with the checks produced to support his claim of having paid the first and last installments. There was no apparent reason for quick action at that time. And as to the payment of 1925: It at once suggests itself, why was the payment made to Mrs. Koegel when the previous five had been made to Goekler? The check stub is not produced, and the brother's supporting testimony, given in an indifferent manner, left the impression that he was a "pinch" witness. There are other criticism of this unsatisfactory evidence, but the outstanding thing that tests credulity is that Harris took no receipts after he was told, when his first check was protested, that cash was preferred to his checks. The natural reaction to such a rebuff would be to ask for one; especially of payments in installments on a mortgage, and to a stranger. The omission to take receipts for cash payments may happen between confidants and occasionally, carelessly, between strangers, but hardly six times consecutively, deliberately. Harris was a man of affairs and appreciated the importance of an acquittance, and he offered no reason for not following common experience and the ordinary dictates of caution. If he, in fact, made the payments, which is doubted, he has only himself to blame if the court declines to accept his secondary proof. The defendant is entitled to the face of the mortgage and interest.